16 N.J. Super. 409 (1951)
84 A.2d 667
ESSO STANDARD OIL COMPANY, PLAINTIFF,
v.
BOARD OF ADJUSTMENT OF THE CITY OF NEWARK, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided December 3, 1951.
*410 Messrs. Stryker, Tams & Horner (Mr. Walter F. Waldau appearing), attorneys for plaintiff.
Mr. Charles Handler, corporation counsel (Mr. Joseph A. Ward appearing), attorney for defendant.
COLIE, J.S.C.
Esso Standard Oil Company filed an amended and supplemental complaint in lieu of prerogative writ, whereby it sought a reversal of the denial by the Board of Adjustment of the City of Newark of the plaintiff's application to reconstruct and continue the operation of a gasoline station at the corner of Bloomfield and Summer Avenues in Newark.
Under the pretrial order entered in this case, the question for decision was stated as follows: "The question for decision is whether or not the denial of the permit was arbitrary, unreasonable, capricious and an unreasonable restriction on the use of a restriction of the land." The matter was argued and subsequently briefs were filed, limited, in the main, to a discussion of whether the action under appeal was arbitrary, unreasonable and capricious.
The facts are largely undisputed. The plaintiff in 1925 acquired a triangular parcel of land at the southeast corner of Bloomfield Avenue and Summer Avenue, having a frontage on the former of 109 feet and approximately 141 feet on the latter. The base of the triangle was approximately 90 feet. Shortly thereafter, the plaintiff constructed a gasoline station thereon and has, from that date, itself operated it or operated it through a lessee. In 1948 the Essex County Highway Right-of-Way Commission condemned and took a part of the plaintiff's land fronting on Bloomfield Avenue to a depth of 34 feet. The value of the land taken was fixed and the plaintiff accepted compensation therefor and conveyed the strip to the County of Essex. Thereafter, and because the county did not require immediate use of the property, the plaintiff leased it from the county and continued to conduct its gasoline station there until February 25, 1951, when the *411 use was discontinued and the gasoline station demolished. There remained in the ownership of the plaintiff, a strip having a frontage of approximately 63 feet on Bloomfield Avenue and 83 feet on Summer Avenue, and the plaintiff thereafter acquired a 60-foot frontage on Bloomfield Avenue immediately adjacent thereto with the intent of erecting a gasoline station on the combined properties. The plaintiff prepared plans for a single-bay lubritorium and gasoline station, secured approval from the National Production Authority of the United States Department of Commerce and applied to the zoning officer of the municipality for a renewal of the permit theretofore issued to the plaintiff permitting it to use the land for a gasoline station. The application was denied.
The applicable provision of the zoning ordinance is section 10 which, so far as pertinent, reads:
"Since gasoline or oil stations, automobile filling and cleaning stations and public garages, while necessary, may be inimical to the public safety and general welfare if located without the due consideration of conditions and surroundings, no permit therefor shall be issued except upon application first made to the Board of Adjustment, which is directed to hear the same in the same manner and under the same procedure as the board of adjustment is empowered by law and ordinance to hear cases and make exceptions to the provisions of a zoning ordinance, and empowered to recommend in writing to the Board of Commissioners that a permit for such use be granted, if, in its judgment, it will not be detrimental to the health, safety and general welfare of the community, and is reasonably necessary for the convenience of the community."
At the hearing the plaintiff produced witnesses who testified that the station had been in operation since 1925 and had done a volume of business ranging from approximately 300,000 to 200,000 gallons a year; that there never had been any complaints about the manner in which the station was conducted. In addition, the plaintiff produced a real estate appraiser familiar with the property in question who had had some 30 years' experience. His testimony was that the erection of the proposed gas station on that corner would *412 enhance property values in the area; that because of the triangular shape of the property, its best use would be for a gasoline station and that there was a real need for one at that site.
The testimony of the objectors who appeared at the meeting of the board of adjustment may be summed up by stating that the objections were that there were too many gas stations in that area; that on occasion boys had pitched pennies on the gas station property and one adjacent property owner objected that at some time in the future he might desire to use his property as an office for a doctor and that it might be detrimental to his property to have a gas station adjoining it.
At the hearing before the board, a number of collateral issues were gone into, none of which has any bearing upon the single question as to whether the action of the board was reasonable.
A gas station had been conducted at this site for 25 years and its use was discontinued because of the taking of a part of the property and was not an abandonment by the plaintiff. There is no evidence that a continuance of the use will be detrimental to the general welfare or an impairment of the intent and purpose of the zoning plan and ordinance. The shape of the property would make its use in any other capacity difficult.
The court is unable to find any testimony in the record to sustain the action below. Accordingly judgment will be entered for the plaintiff.